UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERIN M. HINKLE,<br><br>Defendant. | 4:18-CR-40111-05-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING MOTION TO SUPPRESS |

Defendant, Erin M. Hinkle, is charged with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 60. Hinkle filed a motion to suppress statements made in the course of a custodial interrogation. Docket 158. The court referred Hinkle's motion to Magistrate Judge Veronica Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended defendant's motion to suppress be denied. Dockets 170, 175. Hinkle filed objections to the Report and Recommendation. Docket 181. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Hinkle's motion.

**LEGAL STANDARD**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's

recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and Recommendation (Docket 175), but after a de novo review of the evidence, the court finds the pertinent facts relevant to Hinkle's objections are as follows:[1]

Agent Michael Flanagan was involved in an investigation into Erin Hinkle. A rental vehicle in which Hinkle was a passenger traveled from Minnesota to Wisconsin. On August 3, 2018, Agent Flanagan advised Wisconsin State Patrol that he had probable cause to believe the vehicle was involved in the distribution of methamphetamine. That afternoon, Wisconsin State Patrol initiated a traffic stop of the vehicle. Hinkle was identified as a passenger in the rental vehicle, traveling with Anthony Laws, Jr.

---

[1] An evidentiary hearing was held on October 30, 2019. *See* Dockets 170, 174.

During the stop, both individuals were removed, handcuffed, and placed in the back seat of separate patrol cars. A drug dog conducted an exterior sniff of the vehicle and alerted. Officers searched the vehicle and found drug paraphernalia in the purse located on the passenger side. This initial search occurred roadside along Interstate 94. Because officers believed they were creating a traffic hazard, officers decided to move the vehicle and passengers to a parking lot off a nearby exit. Both Hinkle and Laws, Jr., were transported to the new location in the back seat of separate patrol cars while still handcuffed. A more thorough search of the vehicle at this second site revealed wire transfer receipts and four cellphones. No statements were made by Hinkle at this time.

After the search was complete, Agent Flanagan spoke to Laws, Jr., away from Hinkle. Laws, Jr., agreed to ride with Agent Flanagan to a local police department to have a conversation. After Laws, Jr., agreed, Hinkle was allowed to return to the vehicle. Agent Flanagan testified that he informed Hinkle that Laws, Jr., wished to speak with law enforcement at the local department, and that Hinkle could either follow them or was free to leave. Hinkle agreed to follow them, and drove herself to the station. Although she followed officers to the station, no officer rode with her in the vehicle.

Hinkle's recollection of this conversation differs from Agent Flanagan's. Hinkle testified that Agent Flanagan told her that she could leave in the rental vehicle if she wanted but that they would "have this conversation later" if she chose not to follow law enforcement. She interpreted this admonishment to mean that she was not under arrest but would be arrested if she did not

3

comply. Hinkle testified that because she believed she would be arrested, she chose to follow law enforcement to the station.

Agent Flanagan testified that once at the local department he approached Hinkle in the rental vehicle and told her that she was free to go at any time and that she did not need to stay at the station. He then went inside with Laws, Jr. Again, Hinkle's recollection of the conversation differs from Agent Flanagan's. Hinkle testified that Agent Flanagan told her to stay at the station and that he would come get her later. Hinkle then stayed in the rental vehicle outside the station for over an hour. Eventually, Hinkle needed to use the restroom, and asked police officers outside if she could. Because the local police department was small and did not have a public restroom, an officer led her to a private bathroom in the secured area of the department. The officer waited for her and let her back out of the station. Hinkle then went back and sat in the vehicle, unaccompanied.

Agent Flanagan testified that after speaking to Laws, Jr., he allowed Laws, Jr., to go speak to Hinkle briefly near her vehicle. Hinkle denies this occurred, and testified that Laws, Jr., only told her that it was "going to be ok" from across the parking lot. Once the conversation was over, Agent Flanagan testified that he went to Hinkle in the rental vehicle, told her that she was not required to come in and speak to him, and then asked if she would. Hinkle's recollection again differs. She testified that Agent Flanagan stood at the police door, motioned with his finger for her to come in, and she obliged.

Hinkle then followed Agent Flanagan into the department. At this time, Hinkle's property, including her purse, cellphone, and personal effects within the purse, had not been returned to her. Hinkle was led to an interview room by Agent Flanagan and another officer. The interrogation is captured on video. *See* Docket 160-1. The video shows Hinkle being directed by the officers to sit in the seat closest to the door. *Id.* at 16:56. Agent Flanagan is seen closing the door, and then opening it slightly. *Id.* Hinkle testified that she was unaware that the door was cracked open. Hinkle's cellphone was placed on the table before her. Agent Flanagan began the interrogation by stating that they were there in "not a great" situation. *Id.* Hinkle makes a quick comment about not having her ID, and then Agent Flanagan informs Hinkle that "first of all, you're free to leave at any time. You're not under arrest. We're not blocking the door. If you want to leave, you tell me, 'Hey, I want to leave; I don't want to talk to you.' So just want to make sure you understand that." *Id.* at 16:57. After this statement, Agent Flanagan begins questioning Hinkle, who provides answers to his questions—including some incriminating answers. At the conclusion of the interview, Agent Flanagan remarks, "That's it. There's your stuff . . . Then you guys are on your way." *Id.* at 17:26-17:27. Hinkle's purse and other personal effects were returned to her, although the drug paraphernalia, some documents, and her cellphone were retained during the search. Hinkle and Laws, Jr., were not arrested and both left.

**DISCUSSION**

Hinkle raises four objections to Magistrate Judge Duffy's Report and Recommendation related to her rights under the Fifth Amendment. Docket 181. First, Hinkle objects that Magistrate Judge Duffy did not enter a specific finding of fact as to Agent Flanagan's admonishment. *Id.* at 1-2. Second, Hinkle objects to Magistrate Judge Duffy's finding that Hinkle's freedom was unrestrained during the police questioning. *Id.* at 2-4. Third, Hinkle objects to Magistrate Judge Duffy's finding that there were no deceptive stratagems used during the questioning. *Id.* at 4. Finally, Hinkle objects to Magistrate Judge Duffy's conclusion that the facts do not amount to Hinkle being in custody. *Id.* at 4-7. The court will address each objection in turn.

**I.    Findings of Fact**

Under the Fifth Amendment, no defendant "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "The rule under *Miranda* prevents the government from using statements 'stemming from custodial interrogation of the defendant,' unless the government has used 'procedural safeguards effective to secure the privilege against self-incrimination.'" *United States v. Laurita*, 821 F.3d 1020, 1023 (8th Cir. 2016) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). At its core, *Miranda* requires that an individual be advised of the privilege against self-incrimination and the right to the assistance of counsel prior to questioning when the suspect is (1) subject to interrogation and (2) in custody. *See United States v.*

*Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). Thus, *Miranda* warnings are required if an individual is both interrogated and in custody.

When an individual is not arrested, the individual is considered to be "in custody" when there is a "restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Black Bear*, 422 F.3d 658, 661 (8th Cir. 2005) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). A court examines the "totality of the circumstances" to determine if a person is in custody. *Id.* The custody determination "is based on the objective circumstances, not on subjective views of the participants." *Id.* (citing *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004)). Thus, the court considers whether a reasonable person would have believed their freedom of action was deprived to a " 'degree associated with formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *Beheler*, 463 U.S. at 1125). The Eighth Circuit has found six factors to be key considerations as to whether an individual is "in custody" for purposes of *Miranda*. Those factors are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349. The first three factors are indications that the individual was not in custody, while the last three are indications that

7

the individual was in custody. *See United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017). The Eighth Circuit has cautioned that these factors are "non-exhaustive." *United States v. Czichray*, 378 F.3d 822, 827 (8th Cir. 2004). The Eighth Circuit considers admonishments that an individual is free to leave and is not obligated to answer any questions to be "weighty in the custody analysis." *United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011).

### A. Admonishment by Agent Flanagan

First, Hinkle objects that Magistrate Judge Duffy did not make a finding of fact that Agent Flanagan admonished Hinkle. Docket 181 at 1-2. Hinkle argues that Agent Flanagan admonished her that if Hinkle did not follow him to the police station, they would "have a conversation later." *Id.* Hinkle often characterizes this statement as a "threat of arrest," and a threat that Hinkle was to either follow law enforcement to the police station or be arrested. *See id.* at 3. Hinkle argues that "there is evidence to conclude that Agent Flannagan (sic) made such a statement," and requests that this court "enter a clear finding of fact regarding the occurrence of this statement . . . ." *Id.* at 2.

Magistrate Judge Duffy did not make a specific finding of fact that Agent Flanagan admonished Hinkle that if she did not follow him to the police station, they would have the conversation later. *See* Docket 175. At the evidentiary hearing, Agent Flanagan never testified that he said those words to Hinkle. *See* Docket 174. Agent Flanagan testified that he advised Hinkle that her husband wished to speak to law enforcement further and that "she was

8

free to leave at any time if she wished to do so and that she did not need to follow [them]" to the police station. *Id.* at 12:1-5. Agent Flanagan testified that Hinkle responded that she wanted to follow them and "was going to drive the vehicle to follow [them] back to the police department." *Id.* at 12:7-9. Hinkle, on the other hand, testified that Agent Flanagan's exact words were "you can leave now, you don't have to follow us, but we will have this conversation later." *Id.* at 48:18-20. But on cross-examination, the United States asked Hinkle, "he didn't say that he was going to place you under arrest to have that conversation?" *Id.* at 64:23-24. Hinkle responded, "No, no." *Id.* at 64:25.

In the Report and Recommendation, Magistrate Judge Duffy noted the discrepancies between Agent Flanagan's and Hinkle's testimony. Docket 175 at 14-16. Magistrate Judge Duffy also noted the inconsistencies between Hinkle's evidentiary hearing testimony and answers Hinkle provided during the taped police questioning. *Id.* at 15. Based on these inconsistencies, Magistrate Judge Duffy made a credibility determination and found that "Hinkle's memory [was] faulty or that she was not completely candid with this court during the evidentiary hearing." *Id.* at 16. Thus, Magistrate Judge Duffy found, consistent with Agent Flanagan's testimony, that Hinkle was told on four separate occasions that she was free to leave and that she was not under arrest. *Id.*

Magistrate Judge Duffy presumably did not enter a finding of fact as to the occurrence of Agent Flanagan's alleged admonishment that he would have a conversation with Hinkle later because Magistrate Judge Duffy made an express credibility determination and adopted facts consistent with Agent

9

Flanagan's testimony—not Hinkle's. Because Agent Flanagan never testified that he told Hinkle "we will have this conversation later," Magistrate Judge Duffy did not enter a finding of fact as to this statement. Instead, because "[t]he assessment of a witness's credibility is the province of the trial court," Magistrate Judge Duffy properly made a credibility determination, and then based the Report and Recommendation on facts consistent with that determination. *United States v. Coney*, 456 F.3d 850, 860 (8th Cir. 2006). (internal quotation omitted). Thus, Magistrate Judge Duffy did not err by failing to enter a finding of fact regarding the occurrence of this alleged statement.

Also, even if Magistrate Judge Duffy had made a finding of fact that this admonishment occurred, it would not have changed the conclusion of the Report and Recommendation. Magistrate Judge Duffy concluded that Hinkle "probably was in custody during the brief period that she rode in the patrol car in handcuffs from the location of the first search to the location of the second search." Docket 175 at 21. It was around this time period that the alleged admonishment that Agent Flanagan "[would] have [a] conversation later" with Hinkle occurred. *See* Docket 174 at 48:18-20. But because Hinkle did not assert that any interrogation occurred during this time frame, Magistrate Judge Duffy found that there were no statements to suppress during this custodial period. Further, Magistrate Judge Duffy did not agree with the assertion that Hinkle's entire encounter with law enforcement was custodial. Instead, Magistrate Judge Duffy focused on the totality of the circumstances "which were present not at some earlier time, but when [Hinkle] was

interrogated." Docket 175 at 21 (citing *United States v. Wallace*, 323 F.3d 1109, 1113 (8th Cir. 2013)). Again, because this alleged admonishment was not directed to Hinkle when she was interrogated, it did not factor into Magistrate Judge Duffy's analysis.

Here, the court concludes Magistrate Judge Duffy properly made a credibility determination and did not include this admonishment in the analysis. Even if the admonishment had been included, the court finds that based on the totality of the circumstances, Hinkle's interrogation was not custodial. Prior to entering the police station, Agent Flanagan testified that he advised Hinkle multiple times that she was free to leave and that she was not under arrest. *See, e.g.*, Docket 174 at 12:3-5, 13:5-9, 14:4-7, 36:21. The totality of the circumstances analysis is not based on Hinkle's subjective belief that she would be arrested, but rather is "based on the objective circumstances." *Black Bear*, 422 F.3d at 661 (citing *LeBrun*, 363 F.3d at 720). Evidence that a person was told repeatedly that they are free to terminate an interview is "[s]o powerful . . . that no governing precedent of the Supreme Court . . . holds that a person was in custody after being clearly advised of his freedom to leave or terminate questioning." *Giboney*, 863 F.3d at 1028 (internal citation omitted). Objectively, a person who is told repeatedly that they are not under arrest and free to leave would not feel that they were in custody. Based on the objective circumstances, even including this alleged admonishment, Hinkle was not in custody when the interrogation occurred. Thus, Hinkle's objection is overruled.

11

## B. Unrestrained Freedom of Movement

Second, Hinkle objects to Magistrate Judge Duffy's finding of fact that Hinkle possessed "unrestrained freedom of movement during the questioning." Docket 181 at 2-4. Magistrate Judge Duffy concluded that Hinkle's movement during police questioning was unrestrained. Docket 175 at 22. Hinkle objects, arguing that Magistrate Judge Duffy did not consider the psychological restraint of freedom Agent Flanagan placed on Hinkle by suggesting that she would face arrest if she did not comply. Docket 181 at 3. Hinkle argues that this threat of arrest had a heavy psychological impact that prevented her from having unrestricted freedom of movement during the police questioning. *Id.*

Again, as discussed above, Magistrate Judge Duffy did not consider the psychological restraint of freedom placed on Hinkle by a statement that she would face arrest if she did not comply because Magistrate Judge Duffy—after making an express credibility determination—found any discrepancies between Agent Flanagan and Hinkle's testimony in favor of Agent Flanagan. Docket 175 at 16. Magistrate Judge Duffy also focused the analysis on the totality of the circumstances that were present when Hinkle was interrogated, not at some earlier time when this alleged admonishment occurred. *See id.* at 21 (citing *Wallace*, 323 F.3d at 1113). Thus, Magistrate Judge Duffy's analysis properly focused on the unrestrained freedom of movement Hinkle possessed during the police questioning and did not mention this admonishment. *See id.* at 22-23.

Here, even if the court considers the psychological restraint placed on Hinkle by the alleged admonishment, the court still finds that Hinkle had

12

unrestricted freedom of movement and was not in custody. First, although Hinkle testified that she subjectively did not believe she had a choice to not follow officers to the station, the court views the situation objectively. A reasonable person in Hinkle's position, after being unhandcuffed and allowed to return to her vehicle alone, would not have believed that she was under arrest. Objectively, a reasonable person does not feel that she was formally arrested when she was not restrained and was allowed to return to her vehicle unaccompanied by law enforcement.

Second, as explained by Magistrate Judge Duffy, Agent Flanagan informed Hinkle four times before her questioning that she was free to leave and that she was not under arrest. *Id.* at 22. " 'That a person is told repeatedly that [she] is free to terminate an interview is powerful evidence that a reasonable person would have understood that [she] was free to terminate the interview.' " *Giboney,* 863 F.3d at 1027-28 (quoting *Czichray,* 378 F.3d at 826). This repeated explanation from officers that Hinkle was free to leave and that she was not under arrest, paired with her unrestrained freedom of movement during the questioning as she sat closest to an open door, and was not handcuffed or restrained, leads the court to conclude that any admonishment that the officers would have a conversation with her later did not place a psychological restraint on Hinkle that she was under arrest. "The most obvious and effective means of demonstrating" that an individual is not in custody is to inform the individual that she is not under arrest and may terminate the questioning. *Griffin,* 922 F.2d at 1349. Based on the objective circumstances,

the repeated explanation that Hinkle was free to leave and was not under arrest would diminish any psychological restraint placed on her by Agent Flanagan's admonishment. Thus, the court finds that Hinkle possessed unrestricted freedom of movement during the questioning.

Hinkle also argues that Magistrate Judge Duffy failed to give due consideration to the seizure of the many means with which Hinkle would exercise her freedom of movement (i.e. the seizure of her purse, wallet, cellphone, and travel notes). Docket 181 at 3-4. Hinkle is correct that Magistrate Judge Duffy did not focus the freedom of movement analysis specifically on the seizure of Hinkle's items. Instead, Magistrate Judge Duffy focused on other factors such as Hinkle's position closest to an open door, that Hinkle was not handcuffed or restrained, and that Hinkle sat outside the police station unrestrained in the vehicle for over an hour prior to the questioning. *See* Docket 175 at 22-23. Also, although Magistrate Judge Duffy did not discuss Hinkle's cellphone or travel notes, Magistrate Judge Duffy did consider that Hinkle's keys were not seized prior to the questioning so that Hinkle could leave on her own had she stopped the interview, and that Hinkle's "purse and its non-contraband contents were returned to her at the conclusion of the interrogation." *See id.* at 23. Magistrate Judge Duffy concluded that because Agent Flanagan "repeatedly told [Hinkle] that she was not under arrest and was free to leave," there was "nothing to suggest her purse and non-contraband contents would not have been returned to her earlier had she chosen to exercise her option to leave." *Id.*

Here, even if the court considers the seizure of Hinkle's personal items, the court still concludes that based on the totality of the circumstances, Hinkle possessed unrestricted freedom of movement and was not in custody. At the evidentiary hearing, Agent Flanagan testified that Hinkle was free to leave with her wallet, purse, and other personal effects to get home, although her cellphone was retained as evidence. *See* Docket 174 at 17:6-12. After reviewing the interview video, Hinkle is advised almost immediately upon her arrival in the interview room that she was "free to leave at any time. You're not under arrest. We're not blocking the door. If you want to leave, you tell me, 'Hey, I want to leave; I don't want to talk to you.' " *See* Docket 160-1 at 16:57. On the video, Hinkle is closest to the door that is left ajar and is not handcuffed or restrained. *See id.* A reasonable person in such an environment would feel that her freedom of movement was unrestricted.

Also, Hinkle was not only free to remove herself from the room but was equally able to freely remove herself from the police station because she still had the keys to the vehicle. There is nothing to suggest that a reasonable person in Hinkle's position would not believe her personal items would be returned to her if she exercised her option to leave. Based on the totality of the circumstances, including considering the seizure of Hinkle's personal effects, Hinkle possessed unrestricted freedom of movement during the police questioning and was not in custody. Thus, Hinkle's objection is overruled.

## C. Deceptive Stratagem

Third, Hinkle objects to Magistrate Judge Duffy's finding of fact that no deceptive stratagems were used during the police questioning. Docket 181 at 4. Magistrate Judge Duffy concluded that there were no "strong arm tactics or deceptive stratagems used during the questioning of Ms. Hinkle." Docket 175 at 24. Hinkle argues that the threat of arrest was used as a deceptive stratagem to coerce Hinkle into complying with Agent Flanagan's directions and following law enforcement to the police station to be questioned. Docket 181 at 4. Hinkle argues that admonishing a suspect that they are free to leave but will be arrested is a deceptive stratagem. *Id.*

Again, similar to Hinkle's first two objections, Magistrate Judge Duffy did not make a finding of fact that the admonishment was a deceptive stratagem because Magistrate Judge Duffy made an explicit credibility determination and found that "Hinkle's memory [was] faulty or that she was not completely candid with this court during the evidentiary hearing." Docket 175 at 16. Thus, Magistrate Judge Duffy's analysis focused on any strong arm tactics or deceptive stratagems during the police questioning, and did not mention this admonishment. *See id.* at 22-23.

Here, even if Agent Flanagan had admonished Hinkle during the traffic stop that she was free to leave but would be arrested, the court concludes that there were no strong arm tactics or deceptive stratagems used during the questioning of Hinkle. First, a threat of arrest is not a deceptive stratagem. There is nothing deceptive about a direct admonishment that someone would

16

be arrested. Second, as discussed at length above, Hinkle was informed on multiple occasions that she was free to leave and that she was not under arrest, including at the very beginning of the police questioning. Thus, even if the alleged admonishment could be construed as a deceptive stratagem, any effect it had was diminished by the repeated advisement that Hinkle was not under arrest and was free to leave. Also, Agent Flanagan was very open with Hinkle about why police wanted to speak with her, and began the interrogation by noting that they were not in a great situation. *See* Docket 160-1 at 16:56. Throughout the interrogation, the officers do not appear to lie to Hinkle, aggressively or forcefully question her, or take any hostile position. *See id.* Thus, based on the totality of the circumstances, there is no evidence that strong arm tactics or deceptive stratagems were used during the questioning of Hinkle. Hinkle's objection is overruled.

## II. Conclusions of Law

Finally, Hinkle objects to Magistrate Judge Duffy's conclusion of law that the facts do not amount to Hinkle being in custody for purposes of the Fifth Amendment. Docket 181 at 4-7. Hinkle also similarly objects to Magistrate Judge Duffy's conclusion that no objectively reasonable person in Hinkle's position would have believed she was not under arrest when given the option to follow the police officers or continue on her way. *Id.* at 6. After a review of the evidence, Magistrate Judge Duffy concluded that Hinkle was not in custody. Docket 175 at 22-26.

As discussed above, when determining whether an individual is in custody, the court examines the totality of the circumstances from an objective view. *See Black Bear*, 422 F.3d at 661. The court may consider six nonexclusive factors, including whether the individual was informed that she was free to leave, not under arrest, or that the questioning was voluntary, whether the individual possessed freedom of movement, whether strong arm tactics or deceptive stratagems were used, whether the individual initiated the police contact, whether the atmosphere was police dominated, and whether the suspect was ultimately placed in custody. *See Griffin*, 922 F.2d at 1349. "The ultimate inquiry must always be whether" the individual "was restrained as though [they] were under formal arrest." *Czichray*, 378 F.3d at 827.

Here, the court finds that the facts support a conclusion that Hinkle was not in custody during the interrogation, and that a reasonable person in Hinkle's position would not have believed she was under arrest. The court has already discussed three of the factors that tend to demonstrate Hinkle was not in custody: Hinkle was repeatedly told that she was free to leave and was not under arrest, Hinkle possessed unrestrained freedom of movement during the police questioning, and no strong arm tactics or deceptive stratagems were used during the interrogation. Hinkle was repeatedly told that she was free to leave and was not under arrest, and this is given great weight in the analysis. *See Perrin*, 659 F.3d at 720-21 (noting that the Eighth Circuit finds these advisements "weighty in the custody analysis"). As to the other factors, Hinkle did not voluntarily initiate contact with law enforcement and the atmosphere of

18

the questioning was police dominated. *See* Docket 160-1. But Hinkle did voluntarily agree to leave her vehicle and follow officers inside for an interview. *See* Docket 174 at 14:3-22. Hinkle also was not arrested at the conclusion of the police questioning. *See id.* at 16:15-20; *see also* Docket 160-1 at 17:27 (Agent Flanagan informed Hinkle at the end of the interview that she was on her way). After considering and weighing all the factors, the court concludes that the factors weigh against the interrogation being custodial.

Given the totality of the circumstances, a reasonable person in Hinkle's position would not have believed that she was "in custody" to a "degree associated with formal arrest." *Berkemer*, 468 U.S. at 442 (internal quotation omitted). Because the police questioning was non-custodial, law enforcement did not need to provide Hinkle *Miranda* warnings. Hinkle's objections are overruled.

## CONCLUSION

On August 3, 2018, Hinkle was repeatedly told she was free to leave and that she was not under arrest. Instead of being immediately escorted into the police station, Hinkle sat in her vehicle for over an hour by herself. After voluntarily choosing to go inside the police station, Hinkle was reminded she was free to leave and not under arrest. During the questioning, Hinkle was seated closest to an open door and was not handcuffed or restrained. No strong arm tactics or deceptive stratagems were used during the questioning, and Hinkle was not arrested following the interview. Under the totality of circumstances, Hinkle was not in custody, and thus, *Miranda* warnings were

19

not required prior to her questioning. The court adopts Magistrate Judge Duffy's recommendation as modified and denies Hinkle's motion to suppress. Thus, it is

ORDERED that the report and recommendation (Docket 175) denying Hinkle's motion to suppress is adopted as modified by this opinion.

Dated December 3, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE